## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

COLONY INSURANCE COMPANY,

    Plaintiff,

v.

Case No. 10-14969
Hon. Lawrence P. Zatkoff

COMPREHENSIVE REHABILITATION
CENTERS, INC. d/b/a Outcomes Rehabilitation
Center, RYAN LEE WALKER, and
HOWARD T. LINDEN, as personal representative
of the Estate of Patrick Bergeron

    Defendants.

_____/

### OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 21, 2011.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Summary Judgment [dkt 20]. Defendant Linden filed a response, which Plaintiff has replied to. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

On December 15, 2010, Plaintiff Colony Insurance Company ("Colony") filed this action against Defendants Comprehensive Rehabilitation Centers, Inc. ("Comprehensive"), Ryan Walker, and Howard Linden, seeking a declaration from the Court that the general commercial liability insurance policy issued by Colony to Comprehensive does not cover claims against Comprehensive in a lawsuit filed by Defendant Linden regarding the death of Patrick Bergeron.[1]

### A. The Death of Patrick Bergeron

On May 18, 2004, Bergeron, at fourteen years old, became a client of Comprehensive at its Springbrook Center facility located in Horton, Michigan. This facility is a private, state licensed child caring institution. Comprehensive also transported it clients to and from appointments, including medical appointments and scheduled recreational activities. On August 25, 2004, Defendant Walker, as an employee of Comprehensive, was transporting Bergeron regarding scheduled recreational activities. While Defendant Walker was traveling towards Jackson, Michigan, Bergeron opened the rear passenger door on the van and allegedly jumped from the van traveling at a speed greater than 50 miles per hour. Bergeron suffered traumatic and fatal injuries from impacting the highway. He was pronounced dead later that day.

### B. The Underlying Lawsuit

In 2007, Defendant Linden, as personal representative of Patrick Bergeron's estate, filed a lawsuit in Jackson County Circuit Court, Case No. 07-01663-NI ("Underlying Lawsuit").[2]

---

[1] The Court's jurisdiction is based on diversity of the parties as Colony is an insurance company existing under the laws of Virginia and Defendants are citizens of Michigan.

[2] Based on the parties' representations, the case is currently stayed until January 11, 2012.

Comprehensive and Defendant Walker are named defendants in the case. Defendant Linden seeks damages from Comprehensive and Defendant Walker arising out of the death of Bergeron. Defendant Linden claims that Comprehensive and Defendant Walker were aware of Bergeron's tendency to elope, *i.e.*, to flee or escape, from supervision. Having notice of Bergeron's tendencies, Defendant Linden also claims in the Underlying Lawsuit that Comprehensive and Defendant Walker failed to implement reasonable measures to preclude Bergeron from eloping, which was the proximate cause for his death. In the Underlying Lawsuit, Defendant Linden also asserts a claim against Comprehensive by permitting its van to be negligently operated by Defendant Walker, and a claim of fraud against Comprehensive for representing that its van was covered by automobile insurance when no insurance purportedly existed on the date of Bergeron's death. According to Defendant Linden, his claims proceeded to a case evaluation panel. The panel awarded $1,250,000 in favor of the estate of Bergeron against Comprehensive.

### C. NOTICE TO COLONY

Comprehensive first provided notice of Bergeron's death to Colony on August 31, 2004. In response, Colony denied any coverage under the Policy based in part on the Auto Exclusion. After the Underlying Lawsuit was filed, Comprehensive provided notice to Colony of the action. On July 18, 2007, Colony denied any coverage under the Policy based in part on the Auto Exclusion. On September 28, 2010, Comprehensive's and Defendant Walker's counsel in the Underlying Lawsuit again provided notice after a first-amended complaint was filed. Colony denied coverage.

### D. THE POLICY

Comprehensive's and Defendant Walker's notices for indemnity and defense to Colony are based on a commercial liability insurance policy. Colony issued the commercial liability insurance

policy, policy no. AP505412 (the "Policy"), to Comprehensive, effective October 1, 2003, to October 1, 2004.

The Policy provides in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

The Policy contains an endorsement that excludes injury arising out of the "ownership, maintenance, use or entrustment to others" of any "auto". The endorsement (the "Auto Exclusion") states:

> g. Aircraft, Auto or Water Craft
>
> "Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

The terms identified by quotations in the Policy are defined in the Policy. The definitions in pertinent part are:

4

>2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."
>
>3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> * * *
>
>13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[3]

### E. PROCEDURAL BACKGROUND

On December 15, 2010, Plaintiff filed this case seeking a declaratory judgment that it had no duty to defend or indemnify Comprehensive or Defendant Walker in the Underlying Lawsuit. Specifically, Count I seeks a declaration that there is no coverage due to the Auto Exclusion under the Policy for the Underlying Lawsuit. In Count II, Plaintiff seeks a declaration that the fraud alleged in Count IV of the Underlying Lawsuit against Comprehensive is not an "occurrence" as defined in the Policy. While Defendant Linden responded to Colony's Complaint, Comprehensive and Defendant Walker failed to respond to the Complaint. Having failed to respond, Clerk's Entry of Defaults were entered on March 25, 2011, as to Comprehensive and Defendant Walker.[4] Plaintiff then filed the instant Motion for Summary Judgment.

### III. STANDARD OF REVIEW

---

[3] An endorsement within the Policy modified the definition of "occurrence" as follows: "'Occurrence' also means acts, errors or omissions in the render or failure to render professional health care services."

[4] Colony acknowledges in its Motion for Summary Judgment that Defendant Linden, as a third-party claimant and potential judgment creditor, has standing to argue coverage issues under the Policy. *See Allstate Ins. Co. v. Hayes*, 442 Mich. 56 (Mich. 1993).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient

[to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

According to Colony, Bergeron's death arose out of Comprehensive's and Defendant Walker's use of the van. Colony therefore concludes that the Auto Exclusion in the Policy, which excludes liability for "'[b]odily injury' . . . arising out of or resulting from" the use of an "auto", abrogates Colony's duty to indemnify Comprehensive or Defendant Walker against the Underlying Lawsuit. While Defendant Linden does not dispute the facts surrounding Bergeron's death, Defendant Linden disputes that the Auto Exclusion applies in this case. Defendant Linden argues that a genuine dispute of fact exists as to whether Bergeron's death arose out of the use of an automobile. He specifically points to the phrase "arising out of."[5]

As the parties' arguments center on the phrase "arising out of", the Court notes that the phrase is not defined in the Policy. Even so, Michigan courts[6] examining the same phrase in automobile-related accidents have found that there must be a *causal connection* between the injury sustained and the use of the automobile:

---

[5] Defendant Linden also asserts that Plaintiff's Motion should be denied because Comprehensive filed for Chapter 7 bankruptcy on May 3, 2011, and this case should be stayed until further order of the bankruptcy court. This argument is now moot as the bankruptcy court entered an order lifting the stay and allowing Colony to proceed in this case on September 2, 2011.

[6] The Court's jurisdiction over this case is based on diversity jurisdiction. As such, the Court must apply the choice-of-law provisions of the forum state, *i.e.*, Michigan's choice-of-law provisions. *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). Applying such provisions, the Court will use Michigan substantive law because there is neither evidence of a substantial relationship between another state and the Policy nor evidence that Michigan law would conflict with another state's law, of which that state has an interest greater than Michigan. *See id.*

7

> While the automobile need not be the proximate cause of the injury, there still must be *a causal connection between the injury sustained and the ownership, maintenance or use of the automobile* and which causal connection is more than incidental, fortuitous or but for. The injury *must be foreseeably identifiable* with the normal use, maintenance and ownership of the vehicle.

*Kangas v. Aetna Casualty & Surety Co.*, 64 Mich. App. 1, 17 (Mich. Ct. App. 1975); *see Pacific Empl'rs. Ins. Co. v. Mich. Mut. Ins. Co.*, 452 Mich. 218, 226 (Mich. 1996) (finding that the injuries incurring to a student after leaving the school bus arose from the use of the bus because the injury sustained was foreseeable by leaving the student at the wrong stop).

Several Michigan cases provide further understanding of when an injury is causally connected and foreseeably identifiable to the use of the automobile, not merely incidental or fortuitous. In *Vanguard Ins. Co.*, the Michigan Supreme Court reviewed three horrific deaths that involved an automobile. *Vanguard Ins. Co. v. Clarke*, 438 Mich. 463, 467 (Mich. 1991) (*overruled in part by Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 63 (Mich. 2003)). A father, his wife and son lived in a house with an attached garage. *Id.* The father consumed alcohol during a bowling activity and then returned home. *Id.* He drove into the garage, shutting the garage door. *Id.* While unclear why he failed to leave the car or shut the car off, he died in the garage due to carbon monoxide fumes. *Id.* Investigators presumed alcohol was a factor. *Id.* During the night, his wife likely went to the garage searching for her husband and also died from the fumes. *Id.* Investigators also found the son dead in the hallway of the home, presumably dying from the fumes after he got out of his bed. *Id.*

In analyzing the insurance company's liability under a homeowners policy that contained an exclusion for bodily injury "arising out of the ownership, maintenance, operation [and] use" of an automobile, the Michigan Supreme Court held that the clear terms of the auto exclusion applied.

*Id.* at 468. The Michigan Supreme Court explained that the fumes produced by the running automobile—not the garage door prohibiting the fumes from escaping—was the death-producing instrumentality. *Id.* at 473.

The Michigan Court of Appeals came to the opposite conclusion of whether the use of an automobile was causally connected to the resulting injury in *Auto Owners Ins. Co. v. Rucker*, 188 Mich. App. 125 (Mich. Ct. App. 1991). In *Rucker*, a female was gunned downed by a passenger riding in a car. *Id.* at 126. An insurance policy covering the car used in the drive-by shooting covered damage "arising out of the use of an automobile." *Id.* 126–27. The court explained that the death arose from the firing of a shotgun and the use of the automobile, while making the criminals' approach and escape easier, was incidental to the female's death. *Id.* at 127. The court held that events such as a drive-by shooting are not a foreseeable use of a motor vehicle. *Id.*

Turning to this case, the Auto Exclusion excludes coverage for: "'Bodily injury' . . . arising out of or resulting from the ownership, maintenance, use or entrustment to others of any . . . 'auto.'" As an initial matter, the Court finds that a plain reading of the Auto Exclusion proposes only one reasonable interpretation and the exclusion is unambiguous. *See Vanguard Ins. Co.*, 438 Mich. at 468, 474 (finding the auto exclusion containing the phrase bodily injury "arising out of the ownership, maintenance, operation [and] use" of an automobile "explicit and unambiguous"); *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 460 Mich. 558, 566 (Mich. 1999) ("An insurance contract is ambiguous when its provisions are capable of conflicting interpretations."); *Mich. Twp. Participating Plan v. Pavolich*, 232 Mich. App. 378, 382 (Mich. Ct. App. 1998) ("[I]f a contract, even an inartfully worded or clumsily arranged contract, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear.").

Applying the standard developed in the Michigan case law as to whether an injury arises out of the use of an automobile, the Court concludes that Bergeron's death arises out of the use of an automobile. It is undisputed that Bergeron's death resulted from him jumping from the door of Comprehensive's van and impacting the road surface. The causal connection between the use of the van to transport Bergeron and his death are not merely incidental or fortuitous; Bergeron's death arose out of the normal use of the van as a means of transporting Comprehensive's clients. Because it is foreseeable that Bergeron would suffer traumatic injuries by jumping from the van while being transported, Bergeron's death was causally connected and foreseeably identifiable with the normal use of the van.

This holding conforms to the holdings in *Vanguard Ins. Co.*, *Pacific Empl'rs. Ins. Co.*, and *Rucker*. Similar to the fumes expelled by the vehicle in *Vanguard Ins. Co.* being the death-producing instrumentality, the van's use for transportation of Bergeron over the roadways was the death-producing instrumentality. *See Vanguard Ins. Co.*, 438 Mich. at 473. Likewise, just as it is foreseeable that a student dropped at the wrong stop by a school bus may be injured as held in *Pacific Empl'rs. Ins. Co.*, it is foreseeable that Bergeron, who is an individual known to have a tendency to elope from Comprehensive's supervision, would be injured while using the van to transport him to activities away from the Springbrook facility. *See Pacific Empl'rs. Ins. Co.*, 452 Mich. at 226.

The Court also finds its holding in line with the *Rucker* decision. Defendant Linden, however, argues that similar to the car's incidental use in the shooting in *Rucker*, the use of the van was only incidental because Bergeron's risk of eloping from Comprehensive existed regardless of

10

his activity. The Court disagrees and finds that the facts in this case are distinguishable from *Rucker*. In *Rucker*, the court explained that the automobile merely assisted with the drive by shooting, but the injury resulting to the individual could have occurred regardless. *Rucker*, 188 Mich. App. at 127. The court further noted that the normal use of a vehicle does not include drive by shootings. *Id.* That is not the case here. Bergeron's death resulted from impacting the road surface while exiting the van at a speed greater than 50 miles per hour. The manner in which the death occurred was not possible without the use of the van. And, the normal use of the van included transporting clients like Bergeron to their scheduled activities. The Court therefore finds that Bergeron's death "arises out of" the use of an auto and the Auto Exclusion therefore applies.

Having determined that the Auto Exclusion excludes coverage regarding Bergeron's death, the Court further finds as a matter of law that Plaintiff has no duty under the Policy to indemnify or defend Comprehensive and Defendant Walker in the Underlying Lawsuit. Accordingly, summary judgment is granted in favor of Plaintiff.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [dkt 20] is GRANTED.

Having determined there is no coverage under the Policy, IT IS FURTHER ORDERED that t

his case is closed and a judgment will enter accordingly.

    IT IS SO ORDERED.

                              s/Lawrence P. Zatkoff
                              LAWRENCE P. ZATKOFF
                              UNITED STATES DISTRICT JUDGE

Dated: December 21, 2011

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 21, 2011.

                              s/Marie E. Verlinde
                              Case Manager
                              (810) 984-3290